UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEAN PRABHAKARAN-LUCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 CV 10264 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SAINTS MARY AND ELIZABETH | ) | |
| MEDICAL CENTER AND RESURRECTION | ) | |
| HEALTH CARE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Jean Prabhakaran-Luckett ("Luckett") brings this action against her former employer, Saints Mary and Elizabeth Medical Center and Resurrection Health Care Corporation (collectively, "SMEMC"), alleging discrimination and hostile work environment for events leading up to and culminating in her termination on February 28, 2011. Luckett is an African American woman of Jamaican ancestry who was sixty-four years old when SMEMC fired her. She had been working at SMEMC or a predecessor hospital since 1994. Luckett's complaint alleges: race/color/national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"); hostile work environment and harassment based on her race in violation of Title VII; race discrimination in violation of 42 U.S.C. § 1981; sex discrimination in violation of Title VII; and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). SMEMC seeks summary judgment on all claims. Because the Court finds Luckett has not met her burden to support her claims on summary judgment, SMEMC's motion [32] is granted. SMEMC moves

separately for Rule 11 sanctions [35] against Luckett and her counsel in connection with her Title VII sex discrimination claim. That motion is denied.

## BACKGROUND[1]

Luckett was hired by Saint Elizabeth Hospital in 1994 as a cardiology technician. At the time of her separation, Luckett was a telemetry technician at the St. Mary's Hospital facility and was supervised by Debbie Florio ("Florio").[2] Florio supervised around 67 employees, including three telemetry technicians who worked with Luckett. Luckett was the only full time African American monitor technician. One other African American telemetry technician worked on the night shift as needed after having retired from a full time position. SMEMC had written equal employment and harassment policies.

SMEMC telemetry technicians monitor patient cardiac rhythms, identify critical arrhythmias and trends, and communicate with other medical personnel regarding changes or concerns. Technicians connect the patient to the telemetry leads and then monitor the patient remotely from a central monitoring room. If the telemetry technician notices a significant change in a patient's scan, he or she notifies the nurse in charge of that patient. Other telemetry technicians—some supervised by Florio, some by other managers—work together in the seventh

---

[1] The facts in this section are derived from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. They are taken in the light most favorable to Luckett, the non-movant. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment, unless otherwise noted.

[2] Saint Elizabeth Hospital merged with Saint Mary's Medical Center to become Saints Mary and Elizabeth Medical Center. The SMEMC Defendants refer to themselves in their briefs as "Presence Saints Mary and Elizabeth Medical Center" and "Presence RCH Corporation," a result of another merger that occurred after the events in this lawsuit. SMEMC also asserts briefly, but does not pursue the argument, that it has been improperly named in this action as neither Presence Saints Mary and Elizabeth Medical Center nor Presence RCH Corporation was Luckett's employer. Instead SMEMC argues Luckett has failed to establish her claim against any party. Since this issue has not been briefed and SMEMC challenges the merits of Luckett's case anyway, the Court will proceed as if SMEMC is properly named.

floor central monitoring room.  Per the SMEMC job description, a telemetry technician's responsibilities include "[p]articipat[ing] in orientation of new staff, function[ing] as a Preceptor when assigned."  Luckett testified that she trained new employees who would learn by sitting with her at her station as she worked.  Luckett distinguishes between the orientation of new technicians and training of new technicians.  While she concedes orientation is a part of her job description and does not entail additional pay, she insists training requires additional pay.  SMEMC denies that telemetry technicians were ever given additional pay for any training or orientation activities.

Telemetry technicians work full time, part time, or on an as-needed basis.  Luckett's position was full-time.  Telemetry technicians' shifts are set by monthly schedule.  Shifts could be shortened or cancelled on short notice, depending on the number of patients in the hospital ("patient census").  Prior to the next shift, the eighth floor charge nurse would review the projected patient census and determines the number of monitor technicians needed.  The order of cancellation order reflected whoever was next up on the log, with those already working overtime cancelled first.  The charge nurse could then cancel part or all of a scheduled shift.  Nurses rotate into the charge role and are designated on a shift-by-shift basis.  The cancellations were noted in a cancellation log that was kept both in the central monitoring room and in the office of another manager, Zanaida Ugalde.  The parties disagree about where the official log was kept.  Luckett asserts that she was cancelled more often than other technicians because of her age, race, and national origin.

SMEMC had an attendance policy that provided for a written warning after four occurrences of absenteeism during a rolling twelve-month period, a written warning after the fifth occurrence, a final warning after the sixth occurrence, and termination after the seventh

occurrence.  As of her termination on February 28, 2011, Luckett had received a verbal warning for five absences between March 15, 2010 and May 8, 2010, a written warning for an absence on June 17, 2010, and a final warning on October 11, 2010 for an additional absence.  Luckett had an additional absence from January 15-18, 2011.  During that absence, Luckett called in sick to work each day and applied for coverage of the leave under the Family and Medical Leave Act ("FMLA").  UNUM, the hospital's leave of absence administrator, rejected coverage due to insufficient medical certification/documentation.  When UNUM denied the FMLA leave request, Florio made the decision to terminate Luckett.

As of late February 2011, Luckett had an additional final warning in her file from an insubordination incident earlier that month.  On February 16, 2011, Luckett had arrived at work to discover the initial hours of her shift had been cancelled.  Luckett clocked in anyway.  When Florio instructed Luckett to clock out and return to work at her new shift start time, Luckett refused.  As a result, Luckett was issued a final warning for insubordination.  Luckett disputes that she received proper notice of the shift cancellation.

Luckett's complaint also details a patient care incident on February 27, 2011, the day before she was terminated.  Luckett states that when she arrived for her shift at 11:00 a.m., she saw an irregularity on a patient monitor that had gone unnoticed by a less experienced technician for two hours.  Luckett claims she heard that the patient died as a result of that oversight.  Luckett was not disciplined for or did not participate in any review of the incident.  She asserts this event shows that the hospital was replacing senior employees with less experienced and less costly workers to the detriment of patient care.  The hospital denies that any patient died on that day and further states that the nurse Luckett remembers notifying about the emergency was not on duty at that time.

4

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

**I.     Race Discrimination Claims Under Title VII and Section 1981 (Counts I & III)**

Luckett alleges that her status as an African American woman of Jamaican ancestry was the true basis for her termination. However, Luckett has not met her burden under the *McDonnell Douglas* test to show that similarly situated employees were treated more favorably or that the hospital's proffered reason for termination—her attendance issues—was pre-textual.

In relevant part, Title VII prohibits employers from discriminating against their employees on the basis of race or national origin. 42 U.S.C. § 2000e-2(a)(1) (1991). Section 1981 prohibits racial discrimination in the making and enforcing of contracts, 42 U.S.C. § 1981(a) (1991), and is often used in the employment setting. *See, e.g.*, *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007) (discussing Section 1981 in the employment retaliation context). Courts in this district apply the same *prima facie* requirements to Title VII and Section 1981 claims. *Id.* (collecting cases).

In order to prove discrimination without direct evidence, a plaintiff may use indirect evidence under the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). This requires the plaintiff to show: (1) she is a member of a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees not in the protected class received more favorable treatment. *Keeton*, 667 F.3d at 884. Once plaintiff has made her *prima facie* case, the burden shifts to the defendant to offer a non-discriminatory reason for the adverse action, after which the burden swings back to the plaintiff to demonstrate that the reason is pretextual. *Id.* at 884-85. If the defendant offers its reason for the action, as SMEMC has done here, the Court may skip the point-by-point burden shifting analysis and focus directly on the question of pretext. *Id.* at 885 (citing *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010)).

There is no dispute that Luckett is a member of a protected class and that she was terminated. But Luckett cannot point to any evidence to establish that she was meeting her employer's legitimate job expectations at the time of her termination. Luckett argues that past

performance evaluations did not mention attendance issues and therefore she was performing as required; however, the inquiry is whether an employee was meeting her employer's expectations at the time of termination. *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002). Luckett does not dispute her absences or that she received increasing levels of discipline for those absences in conformity with the hospital's disciplinary policy. Luckett disputes the fairness of UNUM's denial of FMLA coverage for her final absence, but this does not eliminate the prior discipline or create a genuine issue as to whether she was performing. Rather, absenteeism may be considered an indicator of poor job performance under the *McDonnell Douglas* analysis. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997) ("It almost goes without saying that an employer has a legitimate interest in insuring that each employee's work continues at a steady pace. . . . Reliability and promptness are important considerations in maintaining a work force." (citation and quotation omitted)). Luckett has not demonstrated that she was meeting her employer's legitimate expectations when she was terminated. Instead, there can be no dispute that she was in repeated violation of SMEMC's attendance policy, in addition to having received a final warning for insubordination that could, under the disciplinary framework, have independently resulted in immediate termination.

As for the fourth prong, Luckett makes no showing that there were any similarly situated employees who were treated more favorably. A similarly situated employee is one that is "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). The Court will consider various factors including whether he or she had the same supervisor, was "subject to the same standards," and had comparable experience, education, and qualifications, if relevant to the personnel decision in question. *Id*. Luckett presents no evidence of an employee that she claims was not terminated

7

despite a similar number of absences. Luckett's response mentions an employee, Jamie Villanuevo, who was fired and then rehired, but Luckett does not make any case whatsoever that he was fired for absences, much less that he was in a comparable position to her. Luckett also requests a strained and speculative inference that, because her supervisor Florio testified that she only remembered terminating individuals for no show/call-in violations (i.e. a more egregious kind of absence than Luckett's), Florio never terminated anyone who had similar absences to Luckett. This speculation, without even naming the purported individuals at issue, is simply not the kind of evidence that will defeat summary judgment. *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001) (a Title VII plaintiff's "own uncorroborated, conclusory statements that similarly situated co-workers were treated differently" not enough to defeat summary judgment).

Furthermore, Luckett does not submit any actual evidence that race, rather than her absenteeism, was the real reason for her termination. Again, "uncorroborated generalities" are not enough to support a Title VII claim. *See id.* at 615. It is undisputed that Florio was Luckett's supervisor and made the decision to terminate her. Luckett cannot point to any evidence that Florio lied about the reason for the termination. Luckett questions at length the validity of the UNUM denial of FMLA leave and therefore Florio's decision to terminate her based on that denial. *See* Resp. at 7. But an employee's disagreement with the reasons for a termination does not establish pretext. Pretext requires dishonesty on the part of the employer – i.e. the employer lied about its reasons for firing. *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824 (7th Cir. 2006) ("[The plaintiff] must establish that [the defendant] lied about its reasons for firing him—not that [the defendant] was wrong for firing him for the reasons it

gave."). Luckett has not marshalled sufficient evidence to survive summary judgment on her race discrimination termination claims.[3]

## II.  Hostile Work Environment Claim (Count II)

Luckett's complaint alleges a Title VII harassment claim based on race. Luckett has provided no evidence that she was subjected to a hostile work environment based on her race or national origin, therefore summary judgment for SMEMC is granted on this count.

Title VII prohibits discriminatory acts prompted by an employee's race or national origin that create a hostile workplace. *See Jajeh v. County of Cook*, 678 F.3d 560, 566–67 (7th Cir. 2012). A hostile work environment claim requires that a plaintiff show: (1) her work environment was both objectively and subjectively offensive; (2) the harassment was based on her protected status; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Id.* at 566.

Luckett does not provide any evidence of a hostile work environment based on race or national origin. Although she claims another employee was paid for training, she does not allege any facts that would lead a trier of fact to find that she was harassed based on that. Similarly, Luckett states two employees made false complaints about her to management and participated

---

[3] Luckett's response also seems to argue a disparate treatment claim related to the shift cancellations—as the product of bias on the part of Zanaida Ugalde, a supervisor—and that another employee, Halyna Ostapchuck, was paid for training new employees when Luckett was not. These unformed claims have very serious problems, not the least of which is that Luckett does not present any evidence about these allegedly similarly situated employees. On the cancellations, the record shows Luckett was cancelled less often than some other employees and she does not name any employees who received better treatment. Also, it is unlikely the cancellations—apparently a routine part of hospital protocol—would rise to the level of an adverse action under Title VII. *See Oest,* 240 F.3d at 612–13 ("not everything that makes an employee unhappy is an actionable adverse action" (quotation and citation omitted)). As for the training pay, Luckett only claims the other employee told her she was paid. This hearsay statement is uncorroborated and cannot support summary judgment. *See id.* at 614.

In an apparent attempt to excuse this lack of support, Plaintiff's counsel belatedly asserts that he requested but did not receive certain materials in discovery. Luckett never pursued a motion to compel and did not file a Rule 56(d) motion in response to SMEMC's summary judgment papers. Counsel's gamesmanship cannot save this claim or excuse the lack of evidence now.

in a bribing system where they would give expensive gifts to a manager who oversaw scheduling. Neither of these allegations is remotely tied to race, nor do they constitute harassment. Luckett simply does not provide any facts to support her claim, much less show any harassment severe or pervasive enough to rise to the level of actionable hostile work environment.

In response to SMEMC's summary judgment motion, Luckett asserts a new theory of sexual harassment. This claim does not appear in her Amended Complaint or EEOC charge and therefore cannot be considered here. *See* Dkt. 20 (Am. Compl.) & Dkt. 47, Ex. P9 (EEOC Charge).

EEOC administrative exhaustion is a condition precedent for the Title VII claims a plaintiff may later bring. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule is not jurisdictional, but rather serves to ensure the EEOC's "investigatory and conciliatory role" and to give the employer due notice. *Id.* But because EEOC charges are drafted by laypersons and not lawyers, courts grants plaintiffs significant leeway when determining whether an EEOC charge encompasses the claims in a complaint. *Id.* A Title VII plaintiff may proceed on a claim if it is "like or reasonably related to the allegations of the charge and grow[s] out of such allegations." *Id.* (quotation and citation omitted). However, in order to be alike or reasonably related, the charge "must, at minimum, describe the *same conduct* and implicate the *same individuals*" as the complaint. *Id.* at 501.

Luckett's EEOC charge does not contain any description of the conduct by Jamie Villanueva and Thomas Donello detailed in her response, much less mention these individuals. *See* Dkt. 47 at Ex. P9. The charge does not even hint at an allegation of sexual harassment. And, while the charge does claim sex discrimination, the Seventh Circuit has found that a claim

10

of sexual harassment cannot be reasonably inferred from an EEOC charge of sex discrimination. *Cheek*, 31 F.3d at 503. Luckett has not properly exhausted this untimely sexual harassment claim, therefore it cannot be considered here.

### III. Sex Discrimination Claim Under Title VII (Count IV)

For the same reasons Luckett's Title VII race and national original claims fail, her sex discrimination claim fails. Luckett has not established a *prima facie* case of discriminatory termination or pointed to any evidence to show that the firing was because she was a woman and not because of her violations of the hospital attendance policy. In addition, during her deposition Luckett testified that she did not believe she was discriminated against because she is a woman. *See* Dkt. 34, Ex. 1 at 188:5-8. Although this admission is not dispositive, it is indicative of the failure of this claim.

SMEMC moved separately for Rule 11 sanctions [35] based on Luckett's refusal to voluntarily withdraw her sex discrimination count after her deposition testimony. While the Court agrees that Luckett can provide no basis for this cause of action, the Court does not believe that her failure to withdraw the claim before the proving ground of summary judgment is egregious enough to warrant sanctions. SMEMC's motion for sanctions is denied.

### IV. Age Discrimination Under the ADEA (Count V)

Similarly, Luckett has failed to sufficiently support her age discrimination claim. The ADEA prohibits an employer from discharging or discriminating against an individual because of that individual's age. 29 U.S.C. § 623(a)(1) (2008). The Supreme Court has explained, "under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). ADEA claims may be established by direct

evidence or via indirect evidence using the burden shifting analysis. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641–42 (7th Cir. 2008).

Although Luckett argues that her termination was motivated by her age, she points to no evidence to support that claim. Luckett also alleges, again only on her word and without evidentiary support, that manager Zanaida Ugalde's desire to cut costs resulted in more frequent cancellations of Luckett's shifts because she was a higher paid senior employee. Even if Ugalde made the cancellation decisions (a fact that SMEMC disputes), cancelling Luckett's shift because she was paid at a higher rate is not necessarily actionable age discrimination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125–26 (7th Cir. 1994) (explaining that although age and salary level are often correlated, "it is incorrect to say that a decision based on . . . compensation level is necessarily 'age-based,'" and rejecting plaintiff's ADEA claim (citation and quotation omitted)). If the employer's decision was wholly motivated by a factor other than age—and Luckett does not give any more explanation for the allegedly discriminatory cancellations than a cost-cutting rationale—there is no ADEA claim. *See id.* at 1125.

## V.     Retaliation Claims

Luckett's Amended Complaint does not contain any retaliation counts and Luckett cannot amend her complaint with arguments made in response to summary judgment. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). However, even if the Court were to consider Luckett's Title VII, Section 1981, and ADEA claims as encompassing retaliation, these claims also fail.

Luckett's retaliation argument stems from a February 27, 2011 patient care incident that Luckett attributes to a less experienced employee's mistake. In her deposition and complaint, Luckett describes arriving for her shift to discover another technician's patient had cardiac

irregularity that should have been reported immediately but had gone unnoticed for two hours. Luckett immediately notified the nurse and later was told that the patient had died. Luckett was never contacted about this incident and asserts the standard review process was not followed. The event occurred the day before her termination. SMEMC states, and Luckett does not refute, that no patient died in that area of the hospital that day and further the nurse Luckett remembers contacting was not on duty at that time. Nevertheless, Luckett now argues that she was fired for calling in the patient emergency created by the younger, less experienced technician.

     An employee may bring a retaliation claim if he or she can show discrimination by the employer because the employee "has opposed any practice made unlawful by this [law] or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this [law]." 29 U.S.C. § 623(d) (ADEA). Luckett does not establish or even argue that this alleged retaliatory firing had anything to do with her race or sex. Considering this claim in the most generous light for Luckett, the retaliation theory is that Luckett was fired because she opposed age discrimination in staffing and cancellations. But to tie this theory to the February patient care incident requires the inferential leap that the patient distress call, made by her as opposed to the younger employee, could somehow be considered opposition to age discrimination or that she was pre-emptively fired so that she could not complain about the staffing of younger versus more senior individuals such as herself. Luckett does not provide any support for this untimely theory and her speculation is not enough to support any retaliation claim.

## CONCLUSION

For the foregoing reasons, SMEMC's motion for summary judgment [32] is granted. SMEMC's motion for sanctions [35] is denied. Judgment is granted in favor of SMEMC on all claims.

Dated: June 5, 2014

_____
SARA L. ELLIS
United States District Judge